UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SHAHEED ALLAH, a.k.a.
FLOYD MAY #B17282,
    Plaintiff,

vs.                                  04-1127

PAULA RICH,
    Defendant.

**OPINION**

    Before the court are the defendant, Paula Rich's motion for partial summary judgment [20] and the plaintiff's response thereto [26]. The defendants moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and CDIL-LR-7.1.

**Standard**

    Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992). Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

    Fed. Rule Civ. Pro. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574,

586 (1986).  Disputed facts are material only if they might affect the outcome of the suit.  *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Background

Plaintiff is an inmate currently incarcerated at Pontiac Correctional Center.  Defendant Paula Rich is a Paralegal at Pontiac Correctional Center.  Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983, alleging violations of the First Amendment and the Illinois Notary Public Act, 5 ILCS 312/1-102 *et seq*.  Plaintiff asserts that Defendant has engaged in a pattern of retaliation against him for Plaintiff's acts of filing grievances and lawsuits, and further asserts Defendant has interfered with his ability to pursue his pending litigation.  Specifically, Plaintiff had filed 14 Complaints alleging retaliatory acts by various defendants, including the defendant in this litigation.  Plaintiff's Complaints were voluntarily dismissed without prejudice on or about April 28, 2003, based on Affidavits of Voluntary Dismissal that allegedly carry Defendant's signature as the notary.  Plaintiff maintains that he did not file these motions and that his signature was forged.

In addition to the lawsuits, Plaintiff also asserts that Defendant retaliated against him by writing Plaintiff a disciplinary report for possessing carbon paper on December 16, 2002; by turning over documents containing symbols to Internal Affairs on June 20, 2002, which Internal Affairs wrote Plaintiff a disciplinary report for on June 21, 2002; and by mailing a document Plaintiff drafted to another inmate.

Defendant files her motion for partial summary judgment with respect to Plaintiff's retaliation and lack of access to the courts claims regarding the June 21, 2002, and December 16, 2002, disciplinary reports, as well as Defendant's inadvertent act of mailing Plaintiff's legal document to another inmate.

## Undisputed Material Facts[1]

1. Plaintiff is an inmate with the Illinois Department of Corrections, currently incarcerated at Pontiac Correctional Center. Complaint at 2.
2. Plaintiff alleges Defendant has engaged in a pattern of retaliatory acts against him for his act of filing grievances against her. Defendant's Exhibit 1, Deposition of Plaintiff Floyd May taken January 18, 2006 ("Dep."), at 7, lines 8-20.
3. In a disciplinary report written by Defendant Rich on December 16, 2002, Plaintiff was

---

[1]In his response, the plaintiff notes on page 6 that he does not wish to present any additional uncontested material facts and requests that this court views his verified complaint as an affidavit.  However, the court will not do so, because although he proceeds pro se, he is required to follow L. R. 7.1(D), which provides that all motions to summary judgment and responses thereto shall comply with the requirement of this rule.

3. charged with damage or misuse of property and possession of contraband or unauthorized property based on documents from Plaintiff created with carbon paper. Defendant's Exhibit 2, Bates #000001.
4. Carbon paper, tact or intact, is not a listed item that an inmate can posses. See Plaintiff's Exhibit (Institutional Directive 05.10.110) labeled as Defendant's C [26]. Such use of carbon paper is considered unauthorized, as inmates only obtain carbon paper when it is attached to legal documents, and such carbon paper must remain intact. Defendant's Exhibit 2; see also Defendant's Exhibit 3, Affidavit of Paula Rich.
5. Plaintiff admits that he was using carbon paper from the U.S. Marshal forms to make copies of other documents, purportedly because he was having difficulty obtaining copies of his documents. Defendant's Exhibit 1, Dep. at 21, lines 9-23.
6. Lieutenant Evans also wrote Plaintiff a disciplinary report on December 16, 2002, for possessing carbon paper in his cell which was not attached to anything. Defendant's Exhibit 1, Dep. at 22, lines 17-23; at 23, lines 1-11. See also Defendant's Exhibit 4, Affidavit of Lance E. Evans.
7. Plaintiff was found guilty by a prison Adjustment Committee of the charges contained in Lieutenant Evans' disciplinary report. Defendant's Exhibit 1, Dep. at 22, lines 17-23; at 23, lines 1-11. See also Defendant's Exhibit 2, Bates #000002-000003.
8. Possession of unattached carbon paper violates prison rules, as carbon paper may be used by inmates to create tattoos or other gang-related insignia or to create forged documents or signatures. Defendant's Exhibit 4, Affidavit of Lance Evans.
9. Defendant states her sole reason and motivation for writing Plaintiff the December 16, 2002, disciplinary report was Plaintiff's violation of prison rules; namely, inmates are not permitted to possess unattached carbon paper. Defendant's Exhibit 3, Affidavit of Paula Rich.
10. Plaintiff's December 16, 2002, disciplinary report written by Defendant was heard by a prison Adjustment Committee on December 24, 2002. Defendant's Exhibit 2, Bates #000004-000005.
11. In the December 24, 2002, hearing, the Adjustment Committee found Plaintiff guilty of the charges and disciplinary sanctions were imposed. Id.; see also Defendant's Exhibit 1, Dep. at 22, lines 17-23; at 23, lines 1-11.
12. Defendant was not a member of the December 24, 2002, Adjustment Committee and had no involvement in the determination of whether Plaintiff was found guilty of the charges. Defendant's Exhibit 2, Bates #000004-000005; Defendant's Exhibit 3, Affidavit of Paula Rich.
13. On June 20, 2002, Defendant received documents from Plaintiff in the prison law library, and gave those documents to Internal Affairs. Defendant's Exhibit 2, Bates #000006.
14. Plaintiff alleges Defendant retaliated against him by turning these documents, which contained religious symbols, over to Internal Affairs. Defendant's Exhibit 1, Dep. at 23, lines 12-23; at 24, lines 1-4; and at 27, lines 5-9.
15. Defendant states her decision to turn over the documents received on June 20, 2002, was not motivated in any way by grievances or lawsuits filed by Plaintiff. Defendant's Exhibit 3, Affidavit of Paula Rich. Plaintiff admits the documents contained security threat symbols #7, 5 point start and crescent moon. See Plaintiff's admission #18 [26].
16. Based on the documents turned over by Defendant Rich, Plaintiff was charged with gang or unauthorized organized activity in a disciplinary report written on June 21, 2002, by

        Herbert Lillard of Internal Affairs. Defendant's Exhibit 2, Bates #000007- 000008.
17. The Adjustment Committee dismissed the June 21, 2002, ticket charging Plaintiff with gang or unauthorized organized activity. Defendant's Exhibit 2, Bates #000009.
18. The Committee's report indicates that the basis for the decision to dismiss the disciplinary charges against Plaintiff was that "the only mention of security threat group is the symbols #7, 5-point star, and the crescent moon, which are also Islamic religious 5 symbols; and documentation that Offender does practice Islamic religion." Defendant's Exhibit 2, Bates #000009.
19. Plaintiff alleges Defendant interfered with his access to the courts with the disciplinary report involving carbon paper by "intentionally interfering with [Plaintiff's] ability to get [Plaintiff's] legal documents copied so that [Plaintiff] could file them." Defendant's Exhibit 1, Dep. at 28, lines 6-11.
20. Plaintiff alleges Defendant interfered with his access to the courts by turning over the documents containing religious symbols because Plaintiff planned to use the documents as "an exhibit in a religious case that [Plaintiff has], and it was attached to an affidavit." Defendant's Exhibit 1, Dep. at 29, lines 1-12.
21. Plaintiff further asserts that Defendant retaliated against him for complaints and grievances by mailing a legal document drafted by Plaintiff to another inmate and "refusing to copy documents, refusing to send [Plaintiff] case law, making unprofessional remarks, threatening that the situation will get worse . . . . [by throwing documents away]." Defendant's Exhibit 1, Dep. at 32, lines 1-16; see also Plaintiff's Exhibit A, attached to the motion as Defendant's Exhibit 5.
22. Defendant did mail a document Plaintiff drafted to another inmate in May 2002, but the error was unintentional and was subsequently corrected. Plaintiff's Exhibit A, attached to this motion as Defendant's Exhibit 5.
23. Plaintiff claims that Defendant's act has impeded his litigation, and "prevented [Plaintiff] from litigating without due process." Defendant's Exhibit 1, Dep. at 33, lines 8-23.
24. Plaintiff admits that he has been able to file paperwork, motions, and pleadings in his pending lawsuits. Defendant's Exhibit 1, Dep. at 34, lines 6-13.
25. Grievances attached to the Plaintiff's Complaint [11] marked as Exhibit A and Exhibit B show that Plaintiff wrote two grievances on May 22, 2002, wherein he complained that on May 22, 2002 that another inmate had received, via the mail, the Plaintiff's legal document that the Plaintiff had sent to the law library to be copied. The Plaintiff advises his counselor that the other inmate turned the documents in to his gallery officer. A witnessing officer advised that the other inmate did not look at the document, but instead he turned them over to the gallery officer immediately when the inmate realized they were not his.
26. In her June 4, 2002 response to one of the May 22, 2002 grievances, the grievance counselor advised the Plaintiff that she had contacted Rich who advised the counselor that she inadvertently mailed the Plaintiff's document to another offender, but as soon as she realized the error she immediately took steps to correct the error and it was not intentional.

**Discussion and Conclusion**

This court rules that Rich's conduct on June 20, 2002 and December 16, 2002 was not a

wrong of constitutional dimension, if it was a wrong at all, and it is not a proper basis for an action under 42 U.S.C. § 1983. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (citations omitted). Ever since the Court of Appeals articulated in *DeWalt* that retaliation for being a grievant or a litigator gives rise to a constitutional claim (and this court accepts and is bound by that ruling), virtually every prisoner complaint the district court receives raises claims of retaliation. However, if there is a rational, probable cause basis for disciplinary action taken, supported by valid penological aims, it cannot form the basis for a claim of retaliation. Here, the plaintiff lacks sufficient evidence to establish retaliation on the part of the defendant.

"To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry. The ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). If the same action would have occurred regardless of the retaliatory motive, the claim fails. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). Therefore, if a prison officer's actions are supported by legitimate penological concerns, the retaliation claim fails as a matter of law. It is illogical and destructive of the disciplinary system of a penal institution to say that an act by a corrections officer that is supported by legitimate penological purposes can support a claim of retaliation for exercise of a constitutional right.

An act by prison officials that would generally be proper becomes actionable under § 1983 when done in retaliation for the exercise of a constitutionally-protected right. *Howland v. Kilquist*, 833 F.2d 639, 644 (7 Cir. 1987); *see also Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996). Prisoners have a constitutional right of access to courts, but that right is not unlimited. *See generally Lewis v. Casey*, 518 U.S. 343 (1996). With respect to First Amendment rights generally, inmates retain those First Amendment rights "consistent with prison discipline." *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986). A plaintiff must assert factual allegations that present a colorable claim of retaliation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). A plaintiff alleging retaliation in violation of the First Amendment must establish "by a preponderance of the evidence that his or her protected activity was a motivating factor in the defendant's retaliatory action." *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). Plaintiff has the burden of proving "by a preponderance of the evidence" that his act of filing a grievance was a "motivating factor in the defendant's retaliatory action." *Id.* A "motivating factor" has been defined by the Seventh Circuit as a "consideration present to his mind that favors, that pushes him toward, the action. . . . It is a, not necessarily the, reason that he takes the action. Its precise weight in his decision is not important." *Hasan*, 400 F.3d 1001, 1006 (7th Cir. 2005).

If the plaintiff proves that his speech (or in this case, writing grievances, filing lawsuits, etc.) was a motivating factor in the adverse action, then the burden shifts to the defendant to show that the action would have been taken anyway. *Id.* at 1005-06; *Spiegla*, 371 F.3d at 942. *Hasan* delineates three possible cases for the defendant, the third of which provides that if the defendant can show that the "improper reason may have been present to the defendant's mind as something favoring the action he took, but have weighed so lightly in comparison with other factors that it exerted no influence at all on his decision . . . " then the defendant cannot be held liable. *Hasan*, 400 F.3d at 1006. Such retaliation claims must also fail where the defendants

show that an inmate was disciplined for reasons other than retaliation, such as lying about a prison official's conduct. Id. at 1005. With regard to any stray remarks allegedly made, such remarks are not actionable, as verbal harassment does not rise to the level of a constitutional violation. See DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000).

In this case, Plaintiff has the initial burden of proving that his act of filing a grievance was a motivating factor in Defendant's acts of (1) writing Plaintiff a disciplinary report for possessing carbon paper, (2) turning over documents containing symbols to Internal Affairs, which Internal Affairs wrote Plaintiff a disciplinary report for, and (3) mailing Plaintiff's legal documents to another inmate. It is undisputed that Defendant wrote Plaintiff a disciplinary report on December 16, 2002, charging Plaintiff with damage or misuse of property and possession of contraband or unauthorized property based on documents from Plaintiff created with carbon paper. (Undisputed Material Fact No. 3.) It is undisputed that Plaintiff was using carbon paper from the U.S. Marshal's forms to duplicate other documents. (Undisputed Material Fact No. 5.) Inmates may only obtain carbon paper when it is attached to legal documents, and such carbon paper must remain intact. (Undisputed Material Fact No. 4.) Possession of unattached carbon paper violates prison rules, as carbon paper may be used by inmates to create tattoos or other gang-related insignia, or to create forged documents or signatures. (Undisputed Material Fact No. 8.**)**  Although the Plaintiff alleges that the Defendant acts were in retaliation of his filing grievances and lawsuits, the Defendant states that her sole reason and motivation for writing Plaintiff the December 16, 2002, disciplinary report was Plaintiff's violation of prison rules; namely, inmates are not permitted to possess unattached carbon paper. (Undisputed Material Fact Nos. 3, 8-9.) Plaintiff's December 16, 2002, disciplinary report written by Defendant was heard by a prison Adjustment Committee, and the Committee found Plaintiff guilty on these charges. (Undisputed Material Fact No. 11.) Defendant was not a member of the December 24, 2002, Adjustment Committee and had no involvement in the determination of whether Plaintiff was found guilty of the charges. (Undisputed Material Fact No. 12.) Plaintiff also received a disciplinary report from Lieutenant Evans similarly charging Plaintiff with unauthorized possession of carbon paper on December 16, 2002; in that instance, the charge was based on carbon paper found in Plaintiff's cell. (Undisputed Material Fact No. 6.) The carbon paper found in Plaintiff's cell was not attached to anything, and thus violated prison rules. (Undisputed Material Fact Nos. 6-7.) Plaintiff was also found guilty on these charges. (Undisputed Material Fact No. 7.) Plaintiff admittedly was using carbon paper not attached to anything to make replicas of his documents, and such use is unauthorized,

What rational basis can exist for this court to inquire into Rich's motivations when there is at least a probable cause basis for the disciplinary action?[2]   None. The Plaintiff acknowledges

---

[2] In *Illinois v. Gates*, 462 U.S. 213, 238 (1983), the Court held that the proper inquiry into whether probable cause existed for the initiation of criminal proceedings was the existence, under a totality of circumstance analysis, of a "fair probability" that the questioned conduct was a violation of criminal law. An analogy can be drawn to the initiation of a prison disciplinary proceeding. Consider also the rationale in *Whren v. U.S.*, 517 U.S. 806, 813 (1996) that "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." When an objective basis exists for a probable cause determination, the court should not inquire

that he possessed the carbon paper that was not intact.  His retaliation claim regarding the December 16, 2004 disciplinary report  must fail because the Defendant has shown that the Plaintiff was disciplined for reasons other than retaliation.  He violated a prison rule -- possession of contraband or unauthorized property.

With respect to the disciplinary report involving religious symbols, Plaintiff admits that Defendant did not write the June 22, 2002, disciplinary ticket, which was based on Plaintiff's documents containing security threat group related symbols; rather, Defendant turned those documents over to Internal Affairs [for investigation or review].  (Undisputed Material Fact Nos. 13-14.)  Although in his response, the plaintiff claims the Defendant led Internal Affairs to believe the documents contained security threat symbols, the Plaintiff admits the documents contained security threat symbols  --#7, 5 point star and crescent moon.  See Plaintiff's admission #18 [26].  The Plaintiff's First Amendment rights can be limited in pursuit of legitimate penological interests, as elucidated in *Turner v. Safley*.  The factors to consider are as following: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest, (2) whether there are other means of exercising the right in question for prisoners, (3) the impact accommodating the claimed right would have on guards, other inmates, and prison resources, and (4) the availability of obvious and easy alternatives to the regulation. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).  Legitimate penological demands include security and economic concerns.  *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991).

Under Turner, if a legitimate penological interest exists, then a protected right may be infringed.  In this case, enforcement of prison rules constitutes a legitimate penological interest. Two specific disciplinary reports against Plaintiff are at issue: the first was written June 22, 2002, and the second was written December 16, 2002.  As an initial matter, Plaintiff admits that Defendant did not write the June 22, 2002, disciplinary ticket, which was based on Plaintiff's documents containing religious symbols; rather, Defendant turned those documents over to Internal Affairs for investigation of the symbols the documents contained. (Undisputed Material Fact Nos. 13-14.)  Based on these documents, Plaintiff was charged with gang or unauthorized organized activity in a disciplinary report written on June 22, 2002, by Herbert Lillard of Internal Affairs.  (Undisputed Material Fact No. 16.)  While Plaintiff was ultimately not found guilty on the charge, Defendant was not the person who wrote the disciplinary report bringing the charges; further, there were indisputably symbols contained in the documents from Plaintiff. (Undisputed Material Fact Nos. 14, 16, 18).  The Adjustment Committee noted that "the only mention of security threat group is the symbols #7, 5-point star, and the crescent moon, which are also Islamic religious symbols" and found that because Plaintiff practiced the Islamic religion, the symbols were not gang-related. (Undisputed Material Fact No. 18.)

In a prison setting, limitations on free speech in furtherance of legitimate penologic policies are permissible. *Procunier*, 417 U.S. 817.  The fact that the Adjustment Committee dismissed the disciplinary report written by Hillard does not alter the fact that Rich had a legitimate penological reason for turning over the documents to Internal Affairs for further

---

into possible personal motivations.

investigation. Indeed, even the Adjustment Committee acknowledged the documents contained security threat group symbols. This court, not the Adjustment Committee, is the arbiter of whether a basis for a constitutional wrong exists. In the absence of a constitutional claim, the court has no jurisdictional basis to go further. Defendant states her decision to turn the documents over to Internal Affairs was not motivated in any way by any grievances or lawsuits filed by Plaintiff. (Undisputed Material Fact No. 15.), but most important, is the fact that the Defendant had legitimate penological reasons for turning those documents over to Internal Affairs. The court finds there was no constitutional wrong. Turning over the documents to Internal Affairs was proper and therefore that act cannot be construed as a retaliation against May for his grievance and litigation activities. Therefore, the Plaintiff's retaliation claim regarding Rich turning over documents containing security threat group symbols to Internal Affairs on June 21, 2002 fails.

Plaintiff also claims that on May 22, 2002 Defendant retaliated against him for filing grievances by mailing a legal document drafted by Plaintiff to another inmate, as well as "refusing to copy documents, refusing to send [Plaintiff] case law, making unprofessional remarks, threatening that the situation will get worse . . . . [by throwing documents away]." (Undisputed Material Fact No. 21.) To the extent Plaintiff makes these allegations, Plaintiff has no constitutional right to obtain copies of documents or case law unless such actions violated Plaintiff's access to the courts, as discussed below.

First, to the extent the Plaintiff is alleging unprofessional remarks were made by Defendant, even assuming, *arguendo*, for the purposes of this motion only, that Defendant did make any such comments, they would not be actionable. Simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Dewalt V. Carter,* 224 F.3d 607, 612 (7th Cir. 2000)(citations omitted). Without a constitutional violation, unprofessional remarks and threats are constitutionally insignificant verbal assaults.

Defendant admits that she did mail a document Plaintiff drafted to another inmate, but asserts that this was an inadvertent error that was quickly corrected. (Undisputed Material Fact No. 22.) Grievances attached to the Plaintiff's Complaint [11] marked as Exhibit A and Exhibit B show that Plaintiff wrote two grievances on May 22, 2002, wherein he complained that on May 22, 2002 that another inmate had received, via the mail, the Plaintiff's legal document that the Plaintiff had sent to the law library to be copied. The Plaintiff advised his counselor that the other inmate turned the documents over to the gallery officer. A witnessing officer advised that the other inmate did not look at the document, but instead he turned them over to the gallery officer immediately when the inmate realized they were not his. In fact, the Plaintiff obviously knew about this situation the same day as his grievance was written the same day. The Plaintiff does not allege that he never received the documents. In fact, as the counselor responded on June 4, 2002 to the Plaintiff's grievance advising him that Rich had taken steps to correct the problem, there was only a slight delay in the Plaintiff's receipt of the document. The due process clause "does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1988). Here, the plaintiff lacks sufficient evidence to establish retaliation on the part of the defendant.

As there is insufficient evidence to support Plaintiff's claim that his acts of filings grievances or lawsuits motivated Defendant's acts of writing Plaintiff a disciplinary report for possessing carbon paper, turning over documents containing symbols to Internal Affairs, or sending Plaintiff's document to another inmate on one occasion, and Plaintiff has the burden of proving that his grievances or lawsuits were a motivating factor in Defendant's acts, this Court grant Defendant's Motion for Partial Summary Judgment.

To the extent that Plaintiff's speech within his grievances is deemed protected speech under the First Amendment, with respect to the December 16, 2002, disciplinary report, Plaintiff was charged with damage or misuse of property and possession of contraband or unauthorized property based on documents from Plaintiff created with carbon paper. (Undisputed Material Fact No. 3.)  Plaintiff admits he was using carbon paper from the U.S. Marshal's forms to duplicate other documents. (Undisputed Material Fact No. 5.)  Possession of unattached carbon paper violates prison rules, as carbon paper may be used by inmates to create tattoos or other gang-related insignia or to create forgeries. (Undisputed Material Fact No. 8.) Thus, legitimate penological reasons undergird the issuance of the disciplinary report. As Plaintiff's act of possessing carbon paper, which he does not dispute, constitutes a violation of institutional rules, the Adjustment Committee found Plaintiff guilty of the charges. (Undisputed Material Fact Nos. 7, 11).  As legitimate penological reasons existed for the disciplinary reports, and Defendant was not involved in the decision whether to issue a disciplinary report for the religious symbols, the plaintiff's claim of retaliation fails.

Further, the plaintiff lacks evidentiary support regarding his claim regarding access to the courts.  To prevail in a claim regarding the right of access to the courts, an inmate must show actual substantial prejudice to specific litigation. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992). The plaintiff must show proof of concrete injury, in that the defendant's act "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). If the alleged violation is a continuing one, prospective relief is available; however, if the alleged violation has ended, the only avenue for relief is money damages. *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998).  In this case bar, Plaintiff alleges Defendant interfered with his access to the courts with the disciplinary report involving carbon paper by intentionally interfering with his ability to get his legal documents copied so he could file them. (Undisputed Material Fact No. 19.)  More specifically, Plaintiff alleges Defendant interfered with his access to the courts by turning over the documents containing religious symbols because Plaintiff planned to use the documents as "an exhibit in a religious case that [Plaintiff has], and it was attached to an affidavit." (Undisputed Material Fact No. 20.) Plaintiff claims that Defendant's acts have impeded his litigation, and "prevented [Plaintiff] from litigating without due process." (Undisputed Material Fact No. 23.)  Contrary to these assertions, Plaintiff admits that he has been able to file paperwork, motions, and pleadings in his pending lawsuits. (Undisputed Material Fact No. 24.)  To the extent Plaintiff raises an access to the courts claim for anything other than the 14 affidavits, which are not part of this motion, the Plaintiff's claim fails as he lacks the necessary proof of a concrete injury.  There is no genuine issue as to any material fact and therefore, Paul Rich is entitled to a judgment as a matter of law on this claim.  Fed. R. Civ. P.56(c);

It is therefore ordered:

1. Pursuant to Fed. R. Civ. Pro. Rule 56(c), the Defendants' motion for partial summary judgment [20] is allowed.
2. This case will proceed to trial on the remaining claim that the Defendant denied the Plaintiff's access to court concerning the 14 affidavits.
3. A final pretrial conference is scheduled for September 18, 2007, 9:30 am by telephone conference.  The clerk of the court is directed to issue a writ for the parties' participation in the final pre-trial conference.  The parties are further directed to submit the proposed final pretrial order by September 11, 2007.   The defendants are reminded that they bear the responsibility of the initial preparation of the final pretrial order pursuant to Local Rule 16.3-4(H).
4. The plaintiff must provide the witness fee and mileage fee to any witness he seeks to subpoena and is responsible for timely requesting the subpoenas and serving them on the witnesses.  Fed. R. Civ. P. 45.
5. Jury trial is scheduled on October 22, 2007, 9:00 a.m., before the court sitting in Urbana, Illinois.   The parties shall appear in person.  The clerk of the court is directed to issue a writ for the plaintiff's personal appearance at the jury trial.

Enter this 10th day of July 2007.

**s\Harold A. Baker**

_____
Harold A. Baker
United States District Judge